UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
  LLOYD A. RAJCOOMAR,

             Plaintiff,

v.

BOARD OF EDUCATION, NEWBURGH
ENLARGED CITY SCHOOL DISTRICT,

             Defendants.
--------------------------------------------------------------x

**OPINION AND ORDER**

16 CV 1682 (VB)

Briccetti, J.:

    Plaintiff Lloyd A. Rajcoomar, proceeding pro se, brings claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), and related state laws, against defendants[1] the Board of Education and Newburgh Enlarged City School District.

    Now pending is defendants' motion to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6). (Doc. #26).

    For the following reasons, the motion is GRANTED in part and DENIED in part.

    The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1367.

---

[1] The caption of plaintiff's amended complaint lists these entities as two "defendants" (plural). (Doc. #34). However, the amended complaint then refers to "Defendant, Board of Education, Newburgh Enlarged City School District," which he defines as "'Defendant' or the 'District'" (all singular). (Am. Compl. ¶ 2). He nonetheless refers to "defendants" (plural) elsewhere in the amended complaint. (See id. ¶ 20). "Defendants'" opposition brief refers to two defendants, "Board of Education of the Newburgh Enlarged City School District" and "the Newburgh Enlarged City School District," but then refers to them "collectively" as "the District." (Defs.' Br. at 1). For the purposes of this motion, the Court assumes, as defendants appear to, that there are two separate defendants.

1

**BACKGROUND**

In deciding the pending motion, the Court accepts as true all well-pleaded allegations of plaintiff's amended complaint and draws all reasonable inferences in plaintiff's favor. The following facts are taken from the amended complaint and the documents attached thereto or incorporated by reference therein.[2]

Plaintiff is Hispanic of Puerto Rican descent. Defendants employed him as a school monitor from December 1, 2005, to November 27, 2013. Plaintiff was "a CSEA Union contracted 10 month employee who worked September thru [sic] June." (Am. Compl. ¶ 7).

Plaintiff alleges throughout his employment for defendants, he was "subjected to threatening, intimidating and harassing behavior by Defendant's Human Resource Director Mary Ellen Leimer and CSEA President Joyce Quinn among others." (Am. Compl. ¶ 9).

A.   Initial Discriminatory Conduct—2005-2007

According to plaintiff, in 2005, a few weeks after he was hired as a part-time school monitor, he was recommended for a full-time position. However, he did not appear for a scheduled interview for the full-time position because Ms. Leimer and Ms. Quinn threatened him, telling him there were other guards "waiting patiently for a chance at a full time position and many union guards who wanted to work at the school would file a grievance against [him] using their union seniority if [he got] the job." (Am. Compl. ¶ 11). At the insistence of the school principal, plaintiff ultimately did interview for the position and was hired.

---

[2] "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)).

After he took the new position, plaintiff was "further subjected to a racially hostile work environment at the hands of" Ms. Leimer and Ms. Quinn. (Am. Compl. ¶ 12).

In particular, on January 18, 2007, he was "subjected to harassment, dirty looks, intimidation, and being told to shut up for merely asking a question and things continued to turn for the wors[e]," and that "[e]mployees of Caucasian or African-American descent were not subjected to this type of treatment." (Am. Compl. ¶ 16).

On January 26, 2007, a fight broke out between two students at the school. Plaintiff responded and "held both students in a bear hug arm lock against the wall" to stop the fight. (Am. Compl. ¶ 16). Plaintiff alleges he "screamed for help" but Ms. Quinn held back other school monitors so they could not assist him. (Id.). Plaintiff injured his fingers during this incident, but none of "his security partners" would take him to the hospital. (Id.). Ultimately, a teacher took plaintiff to emergency care. According to plaintiff, Ms. Leimer denied plaintiff's request to file for worker's compensation for his injury, "making [p]laintiff take his personal time/sick time for his leave," in violation of the CSEA union collective bargaining contract. (Id. ¶ 17).

Plaintiff further alleges defendants "fraudulently changed [p]laintiff[']s attendance records to show him as being absent on his date of injury, further claiming the incident never happened." (Am. Compl. ¶ 17). According to plaintiff, he then threatened to sue Ms. Leimer "for the damage to his hand and for knowingly placing him in a hostile work environment," and after he filed a grievance, he was transferred "back to his originating school" on or about March 5, 2007. (Id. ¶ 19). Plaintiff alleges he contacted Ms. Leimer to "protest the transfer" and to advise her regarding other concerns he had with the new school, but his concerns were ignored and his grievance records were destroyed. (Id. ¶ 14).

B.      2010 Grievance

On June 18, 2010, plaintiff filed a grievance with the CSEA against Ms. Leimer and Ms. Quinn for "continuing to create a racially hostile work environment, retaliating against [p]laintiff for his prior complaints of discrimination." (Am. Compl. ¶ 21). Plaintiff states he complained that "Puerto Rican School Monitors were being singled out for scrutiny and treated differently." (Id.). However, plaintiff alleges his grievance was never filed, and that on or around October 19, 2010, the CSEA regional director told plaintiff, "I guess I've been so busy I forgot to file your grievance," and "well bud it[']s too late to do anything now," and hung up on plaintiff. (Id. ¶ 24). Plaintiff complained "for months" but was ignored. (Id.). He alleges this constituted a violation of his contractual rights "to be represented and to file grievances," because it "essentially lock[ed] him out." (Id.).

Plaintiff also alleges that because defendants have stated they have "no records of any grievances being filed," this suggests they have destroyed evidence and should be subject to spoliation sanctions. (Am. Compl. ¶ 25).

C.      January 25, 2011, Accident and Subsequent Medical Leave

Plaintiff alleges that on January 25, 2011, he was in a "near fatal car accident" when he was rear-ended on his way to work. (Am. Compl. ¶ 26). According to plaintiff, it snowed heavily that morning, and the school had implemented a two hour delayed opening. Plaintiff was allegedly not informed of the delayed opening, so he went to work at the usual time, 8:50 a.m. When he arrived, another employee told him the school was not yet open. Plaintiff claims he then realized he left his badge and radio headpiece at home "which was required at all times by district policy," so he drove back home to retrieve them. (Id. ¶ 28). Another vehicle struck his while he was on his way back to school after retrieving these items. (Id.). Plaintiff allegedly

4

sustained "traumatic brain injury, injuries to his neck requiring cervical fusion, his back, legs, left foot sustained nerve damage, torn ankle ligaments and other areas requiring nearly 6 surgeries and causing significant permanent injury." (Id. ¶ 26).

Plaintiff had to undergo "numerous surgeries, [was] absen[t] from work, [was] terminat[ed,] and subsequent[ly] appli[ed] for NYS disability retirement." (Am. Compl. ¶ 28). He alleges defendants cancelled his health benefits in January 2013, three months after he underwent foot surgery. He further alleges defendants "refused to allow [him] to return to work to reacquire his health benefits," which caused plaintiff's health to "deteriorate overall." (Id.).

Plaintiff went on medical leave on or about October 12, 2012. He advised Ms. Leimer and his supervisor in "late March" 2013 that he was ready to return to work. (Am. Compl. ¶ 32). However, defendants refused to allow him to return to work unless he was "100% healed," or in other words, had "no restrictions." (Id. ¶ 33). Plaintiff alleges Ms. Leimer was put in charge of this decision and that she "used his disability as a platform to further discriminate and retaliate against [him] and keep him out of work due to his prior complaints of race discrimination." (Id. ¶ 34). Plaintiff asked to return to work with "either limited standing while being able to use a cane or being assigned to the School Monitor desk post assignment," which was a position that "already existed." (Id. ¶ 37). Plaintiff complained to Ms. Leimer on several occasions from August to October 2013, and asserted he was being treated differently with respect to his request for disability accommodations because of his race.

D. Termination

On October 23, 2013, plaintiff's supervisor informed him he was going to be terminated because he had been absent from work for more than one year. He contested this, arguing he

5

was not absent for more than one year because he has "weekends off as well as the months of July and August and any other holiday and weather related closures." (Am. Compl. ¶ 44).

On October 25, 2013, plaintiff allegedly contacted Ms. Leimer and "threatened to sue for the discrimination he faced." (Am. Compl. ¶ 43). Plaintiff alleges Ms. Leimer told him if he did not complain, she could "guarantee him an early disability retirement." (Id.). According to plaintiff, by that time his "condition had worsened and he was not able to work in any capacity," and he therefore "took [Ms.] Leimer's offer and put in for disability retirement as agreed." (Id.). He alleges Ms. Leimer "waited until [plaintiff's application to the the New York State and Local Employee's Retirement System (the "Retirement System")] was stamped received by the N.Y.S. Retirement System on November 7, 2013, and wrote plaintiff's termination letter that same day." (Id.).

Defendants terminated plaintiff on November 27, 2013, and was allegedly replaced by a school monitor who was Caucasian.

E.  Agency Decisions and Alleged Falsification of Records

On October 2, 2014, the Retirement System denied plaintiff's application for disability retirement. (Am. Compl. Ex. 1 at p. 15). The decision, in relevant part, "found that the alleged accident on 1/25/2011 was not caused by nor did it occur during the course of applicant's duties." (Id.).

Between February 2014 and January 2015, "[u]nbeknownst to [p]laintiff at the time," defendants sent "false information to the N.Y.S. Retirement System to have [p]laintiff be denied a retirement pension." (Am. Compl. ¶ 49). In particular, plaintiff alleges Ms. Leimer "falsif[ied] employment attendance records in changing the day of [p]laintiff's work accident on 1-25-11 to a full sick day further claiming falsely that [he] had called out of work sick that day." (Id. ¶ 50).

6

It was "not until he received a denial [of] his NYS Retirement application on October 2nd 2014 . . . that [plaintiff] realized something was wrong." (Id. ¶ 29). Plaintiff further alleges on January 21, 2015, he spoke with Ms. Leimer who "admitted to [him] on the phone . . . [that she] distort[ed] facts to get him denied a retirement pension," and that she "seemed joyous telling [him] to 'take it up with the State' while laughing and disconnecting the phone call." (Id. ¶ 49).

On April 20, 2015, plaintiff filed a complaint of discrimination against the District with the New York State Division of Human Rights ("DHR"), and authorized the DHR to accept it on behalf of the Equal Employment Opportunity Commission ("EEOC") (i.e. it was "cross-filed" with both agencies). (Lineen Dec'l Ex. C; Defs.' Br. at 4).

On October 21, 2015, the DHR issued a determination dismissing plaintiff's complaint because it concluded there was no probable cause to believe the school district had engaged in unlawful discrimination because plaintiff's filing had not been timely. (Lineen Dec'l Ex. D).

On December 2, 2015, the EEOC adopted the findings of the DHR and issued a Right to Sue Letter. Plaintiff received the Right to Sue letter on December 5, 2015. (Lineen Dec'l Ex. F).

By decision dated October 12, 2016, at plaintiff's request, the DHR reopened its case because it found its previous decision had "erroneously dismissed the complaint, on the merits, for lack of probable cause," whereas it should have only been dismissed for untimeliness. (Doc. #39). On October 18, 2016, the DHR issued a determination dismissing plaintiff's complaint because the case was not filed within one year of the alleged unlawful discriminatory practice and was therefore untimely. (Doc. #40).

Plaintiff alleges defendants "are still retaliating against [him] for filing with the Division of Human Rights and" for commencing this lawsuit. (Am. Compl. ¶ 53). He alleges they are

"destroying all evidence of [p]laintiff's prior grievances, complaints of discrimination, retaliation, and any incident reports and accident reports that act as further proof of [p]laintiff['s] claims," and are "purposely distorting facts to retaliate and cause [him] emotional distress." (Id.).

## DISCUSSION

I.   Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation marks omitted). "[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation marks omitted). The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

II.     Statute of Limitations for Title VII and ADA Claims

Plaintiff brings federal claims under Title VII and the ADA, alleging he faced discrimination, retaliation, and a hostile work environment on the basis of his race, national origin, and disability, and failure to accommodate his disability.[3]

---

[3] Plaintiff originally alleged violations of 42 U.S.C. § 1981, but after defendants pointed out that 42 U.S.C. § 1983 is "the exclusive remedy for alleged violations of § 1981 by state actors," the plaintiff dropped that claim. (Defs.' Br. at 13). Specifically, he wrote in his opposition brief, "[d]efendants are correct . . . that [p]laintiff cannot bring § 1981 claims against them and therefore [p]laintiff waives those claims and does not wish to amend those claims to be under § 1983." (Opp'n at 8). Because plaintiff has explicitly stated he does not wish to bring claims under Section 1983, the Court declines to construe his amended complaint to assert such a claim.

Defendants argue plaintiff's Title VII and ADA claims should be dismissed because they are barred by the relevant statute of limitations.

The Court agrees with respect to plaintiff's claims leading up to and including his termination, but disagrees regarding plaintiff's more recent retaliation claim relating to the denial of retirement benefits.

A.      Time Limits on Title VII and ADA Claims

It is well established that "[b]efore filing a Title VII or ADA action in federal court, a plaintiff must timely file charges of employment discrimination with the EEOC." Thomson v. Odyssey House, 2015 WL 5561209, at *6 (E.D.N.Y. Sept. 21, 2015) (citations omitted), aff'd, 652 F. App'x 44 (2d Cir. 2016) (summary order).[4] "A federal employment discrimination claim is time-barred unless the plaintiff first files an EEOC charge within 180 days of the alleged discrimination, or within 300 days if the plaintiff had already filed a charge with the state or local employment agency." Id. (citing 42 U.S.C. § 2000e–5(e)(1)). Defendants acknowledge the 300 day period applies here. (See Defs.' Br. at 14). Then, when a plaintiff is issued a notice of right to sue from the EEOC, he "has 90 days from receipt of that notice to file a lawsuit relating to those charges." Id. (citing Tiberio v. Allergy Asthma Immunology of Rochester, 664 F.3d 35, 38 (2d Cir.2011)).

Here, plaintiff filed his EEOC charge on April 20, 2015. (Am. Compl. ¶ 6). Thus, the 300-day period covered by his EEOC charge extends back to June 24, 2014.

Accordingly, all discrete acts that occurred prior to June 24, 2014, are time-barred, unless they are part of a "continuing violation," which is discussed below. Lukasiewicz-Kruk v. Greenpoint YMCA, 404 F. App'x 519, 520 (2d Cir. 2010) (summary order) ("Recovery for

---

[4]      Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

10

discrete acts of discrimination that occur outside of the applicable limitations period is precluded, even if the acts are related to acts alleged in timely filed charges.") (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)).

Acts that took place after June 24, 2014, however, are not time-barred, and must be considered on the merits.

Here, the following allegations relate to conduct since June 24, 2014: (i) plaintiff's allegation that between February 2014 and January 2015 defendants sent false information to the Retirement System so plaintiff's application for disability retirement would be denied; (ii) the January 21, 2015, telephone call plaintiff had with Ms. Leimer, during which Ms. Leimer allegedly admitted to lying to the Retirement System in order to ensure plaintiff's application would be denied; and (iii) plaintiff's general allegations that defendants are still retaliating against him for filing this lawsuit by destroying his prior grievances, incident reports, and other documents that could support his claims.

The Court concludes plaintiff has plausibly alleged a timely retaliation claim on the basis of his denial of retirement benefits, but that the remainder of plaintiff's federal claims must be dismissed as untimely.

B.      2014-2015 Retirement Benefits Retaliation Claim

The elements of a retaliation claim under Title VII and the ADA are the same: "(1) the employee was engaged in an activity protected by [Title VII or] the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999) (citations omitted) (providing the ADA standard, and noting that the ADA retaliation provision "is

11

substantially similar to the retaliation prohibition in Title VII"); Littlejohn v. City of New York, 795 F.3d 297, 315–16 (2d Cir. 2015) (citing Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010)) (Title VII standard).

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Wright v. Monroe Cmty. Hosp., 493 F. App'x 233, 236 (2d Cir. 2012) (summary order) (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000)).

Importantly, for the purpose of retaliation claims, the adverse employment action element "is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006). Instead, it is understood to "appl[y] broadly to 'employer actions that would have been materially adverse to a reasonable employee or job applicant.'" Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010) (quoting Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. at 57). "Actions are 'materially adverse' if they are 'harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Id. (quoting Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. at 57).

Here, plaintiff alleges (i) he engaged in protected activity when he "threatened to sue for the discrimination he faced," (Am. Compl. ¶ 43); (ii) defendants were aware of this threat; (iii) defendants retaliated by providing false information to the Retirement System so that plaintiff would be denied benefits, an act that could dissuade a reasonable employee from alleging discrimination against defendants; and (iv) plaintiff was denied retirement benefits as a result.

Accordingly, plaintiff has stated a claim for retaliation under Title VII and the ADA with respect to the denial of retirement benefits.[5]

C. Other Pre-June 24, 2014 Conduct

Except for conduct related to alleged retaliatory denial of retirement benefits just discussed, all other conduct alleged to have taken place before June 24, 2014, is time-barred unless it is considered part of either (i) a continuing violation, or (ii) a hostile work environment claim.

The Court concludes the pre-June 24, 2014, allegations that are not related to plaintiff's retirement benefit retaliation claim do not fall into either category.

1. Continuing Violation Exception

Under the "continuing violation" exception, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 155–56 (2d Cir. 2012) (quoting Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993), abrogated on other grounds by Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1 (2011), overruled on other grounds by Greathouse v. JHS Sec. Inc., 784 F.3d 105, 117 (2d Cir. 2015)).

---

[5] Although the cut-off date for timely allegations is June 24, 2014, the specific conduct at issue—relating to the retirement benefits retaliation claim only—allegedly began on October 25, 2013, when plaintiff threatened to sue.  Because all of the conduct related to the retirement benefits retaliation claim is specific and related, the Court determines the actions in late 2013/early 2014 relating to the retirement benefits retaliation are part of the same violation, such that the statute of limitations does not bar the conduct related to that claim that took place prior to June 24, 2014.  To be clear, any allegations that are separate and apart from the alleged retirement benefits retaliation are time-barred, for the reasons explained below.

13

A continuing violation is said to occur in two situations.  First, "the doctrine applies to situations where there are specific discriminatory policies or mechanisms, such as discriminatory seniority lists." Stalter v. Bd. of Co-op. Educ. Servs., 235 F. Supp. 2d 323, 332 (S.D.N.Y. 2002) (citing Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993)).  Second, "the doctrine also applies 'where there have been specific and related instances of discrimination, and the employer has permitted them to continue unremedied for so long that its inaction may reasonably be viewed as tantamount to a policy or practice of tolerating such discrimination.'" Id. (quoting Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001)).

Here, plaintiff's amended complaint fails plausibly to allege that his timely allegations—i.e., the allegations that defendants provided false information to the Retirement System and continue to destroy documents—constitute a continuation of the discrimination he experienced prior to and including his termination.

First, plaintiff does not allege a policy of behavior intended to undermine protected individuals' applications for retirement benefits.  Instead, he alleges certain individuals retaliated against him individually in this instance because he threatened to sue for prior discrimination.  This cannot be said to be a discriminatory policy.

Second, the retaliation claim related to plaintiff's denial of retirement benefits is completely separate and distinct from his other claims of discrimination while he was employed, which ultimately culminated in his termination.  Moreover, the only "specific" event alleged in the timely period—as opposed to broad, vague allegations of destruction of evidence—is the phone call he had with Ms. Leimer on January 21, 2015, during which Ms. Leimer allegedly admitted to lying to the Retirement System in order to ensure plaintiff's application would be

denied.  This incident standing alone cannot be said to be tantamount to a policy or practice of tolerating the discrimination alleged.

Accordingly, plaintiff's claims of discrimination and retaliation that culminated in his termination in November 2013 are time-barred and must be dismissed.

2.      Hostile Work Environment Claim

Finally, "[h]ostile work environment claims are different in kind from discrete acts [because their] very nature involves repeated conduct."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002).  As a result, "'consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period.'"  Id. at 105.

Here, however, none of the allegations that would make plaintiff's claims timely can be said to be part of a hostile work environment because they all took place after plaintiff was terminated.  See Reid v. Aransas Cty., 805 F. Supp. 2d 322, 335 (S.D. Tex. 2011) ("In contrast to Plaintiff's discrimination and retaliation claims, however, Plaintiff cannot use events that happened after his termination to support his hostile work environment claim."); Jenkins v. St. Luke's-Roosevelt Hosp. Ctr., 2009 WL 3682458, at *6, n.15 (S.D.N.Y. Oct. 29, 2009) ("Plaintiff cites no precedent in support of her apparent argument that her hostile work environment claim can be based on events occurring after her termination."); Fox v. Nat'l R.R. Passenger Corp., 2009 WL 425806, at *6 (N.D.N.Y. Feb. 19, 2009) ("Here, Fox was no longer an active employee when the incidents allegedly occurred, and Fox did not witness any of the statements to co-workers regarding their need to 'watch their backs.'  Therefore, the Court fails to see how these incidents affected his working environment."), aff'd sub nom. Fox v. Nat'l R.R. Passenger Corp.,

15

370 F. App'x 156 (2d Cir. 2010) (summary order); Eldaghar v. City of New York Dep't of Citywide Admin. Servs., 2008 WL 2971467, *16 (S.D.N.Y. 2008) (transfer denial not evidence of a hostile work environment because it did not occur until after plaintiff's termination).

Accordingly, plaintiff's hostile work environment claim is also untimely and is therefore dismissed.

III.     State Law Claims

In addition to plaintiff's federal claims under Title VII and the ADA, the amended complaint also contains a state law claim for promissory estoppel. Moreover, as defendants point out, "[a]lthough the plaintiff does not expressly assert a cause of action for violation(s) of the . . . New York State Human Rights Law ("NYSHRL"), he does reference such violations in the 'Jurisdiction and Venue' and 'Claims for Relief' sections of his complaint." (Defs.' Br. at 6).

Defendants argue both of these state law claims must be dismissed.

The Court agrees.

A.      Promissory Estoppel Claim

Under New York law, "in order to state a viable cause of action for promissory estoppel, the following elements must be established: (1) an oral promise that is sufficiently clear and unambiguous; (2) reasonable reliance on the promise by a party; and (3) injury caused by the reliance." N.Y. City Health & Hosps. Corp. v. St. Barnabas Hosp., 10 A.D.3d 489, 491 (1st Dep't 2004) (citation omitted).

Plaintiff alleges defendants "promised that they c[ould] help him secure [early disability retirement] in exchange for not seeking legal action against them for discrimination, retaliation[,] etc.," and that "[a]s a result of this fraudulent promise some of [p]laintiff[']s Title VII claims for relief as well his ADA claims could be time barred," and he "has suffered money damages, loss

of a retirement pension, loss of employment, lost wages and more," as a result.  (Am. Compl. ¶¶ 55-56).

Plaintiff's claim fails because it does not plausibly allege reasonable reliance on defendants' promise.  In particular, he knew his application for retirement benefits was submitted to the Retirement System, and therefore that it was not within defendants' control to either grant or deny him retirement benefits.

Accordingly, plaintiff's promissory estoppel claim is dismissed.

### B. NYSHRL Retaliation Claim

Defendants argue plaintiff's NYSHRL claims for discrimination and retaliation are time-barred.

The Court agrees.

Claims for discrimination and retaliation brought against school districts and boards of education under the NYSHRL are subject to a one-year statute of limitations.  N.Y. Educ. Law § 3813(2–b); Amorosi v. S. Colonie Indep. Cent. Sch. Dist., 9 N.Y.3d 367, 369 (N.Y. 2007).

However, the statute of limitations is tolled during the pendency of a complaint filed with the DHR.  See Penman v. Pan Am. World Airways, 69 N.Y.2d 989, 990 (N.Y. 1987).

Here, DHR issued its decision dismissing plaintiff's complaint on October 21, 2015.  Plaintiff then had sixty days from "service of the order dismissing the complaint" to file suit contesting DHR's decision in state or federal court.  See Gil v. N.Y. State Div. of Human Rights, 17 A.D.3d 365, 366 (2d Dep't 2005).  Therefore, plaintiff should have filed suit by December 21, 2015, or thereabouts (the Court is unsure of the exact date of service, but plaintiff has not alleged

service was delayed) in order to preserve his right to challenge the DHR decision. Plaintiff did not file suit until four and a half months later, on March 4, 2016. [6]

Moreover, while courts are divided regarding whether the statute of limitations is tolled during the pendency of an EEOC complaint, the weight of the authority suggests that claims brought against school districts and boards pursuant to Education Law § 3813(2–b) are not tolled during that time. See Cincotta v. Hempstead Union Free Sch. Dist., 2016 WL 4536873, at *18 (E.D.N.Y. Aug. 30, 2016) ("[A]lthough the Second Circuit appears not to have directly addressed the issue, most lower courts have held that claims against school districts and school officers are not tolled by filings with the EEOC.") (collecting cases); Smith v. Tuckahoe Union Free Sch. Dist., 2009 WL 3170302, at *11 (S.D.N.Y. Sept. 30, 2009) ("Even if [plaintiff] had not waived the argument that his EEOC charge tolled the statute of limitations set forth in Education Law § 3813(2–b), this Court would not be inclined in light of Amorosi and the clear intent of the New York legislature to limit lawsuits against school districts—to read such a provision into the statute."); but see Riccardo v. New York City Dep't of Educ., 2016 WL 7106048, at *6 (S.D.N.Y. Dec. 2, 2016), report and recommendation adopted sub nom. United States v. New York City Dep't of Educ., 2017 WL 57854 (S.D.N.Y. Jan. 4, 2017).

The Court concludes plaintiff's EEOC complaint did not toll the statute of limitations for his NYSHRL claims against defendants here.

---

[6] It is irrelevant that DHR subsequently reopened the complaint and issued a second determination on October 18, 2016, dismissing plaintiff's claims for untimeliness rather than on the merits. (Docs. ##39, 40). By virtue of DHR's October 21, 2015, determination of dismissal, the case was not pending as of that date. Plaintiff failed to timely contest it within 60 days thereafter. Plaintiff did not request that DHR's original dismissal be reconsidered until July 11, 2016, and it was not reopened until October 12, 2016. (Lineen Dec'l Ex. J).

18

Accordingly, plaintiff's NYSHRL claims are barred by the applicable statute of limitations and must be dismissed.

## CONCLUSION

The motion to dismiss is GRANTED as to all acts alleged to have taken place leading up to and including plaintiff's termination in November 2013, and as to plaintiff's state law claims, but is DENIED as to plaintiff's federal claim of retaliation on the basis of denial of retirement benefits.

The Clerk is instructed to terminate the pending motion.  (Doc. #26).

The Court will schedule an initial conference by separate order.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

Dated:   March 13, 2016
             White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge