UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

LLOYD A. RAJCOOMAR,                    :
                         Plaintiff,    :
                                       :
v.                                     :          **OPINION AND ORDER**
                                       :
BOARD OF EDUCATION, NEWBURGH           :          16 CV 1682 (VB)
ENLARGED CITY SCHOOL DISTRICT,         :
                         Defendant.    :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff Lloyd Rajcoomar brings this action under Title VII of the Civil Rights Act of

1964 ("Title VII") and Title I of the Americans with Disabilities Act ("ADA"), alleging that

defendant Board of Education, Newburgh Enlarged City School District (the "District")

retaliated against him for engaging in protected activity under those statutes.[1]

Now pending is defendant's motion for summary judgment. (Doc. #93).

For the reasons set forth below, the motion is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

The parties have submitted briefs, statements of material facts, supporting affidavits,

declarations, and exhibits, which reflect the following factual background.

I.      January 25, 2011, Accident

On December 1, 2005, plaintiff began working as a substitute school monitor for the

District, and on January 12, 2006, he was appointed a school monitor.

---

[1]     In deciding defendant's motion to dismiss in this case, the Court construed plaintiff's
amended complaint to assert claims against multiple defendants. Subsequent filings have made
clear, however, that "Board of Education, Newburgh Enlarged City School District" is a single
entity. Therefore, the Court interprets plaintiff's amended complaint to assert claims against a
single defendant.

On January 25, 2011, the Newburgh area was hit with a snowstorm. Horizons on the Hudson, the elementary school in which plaintiff worked at the time, delayed its opening by two hours, but according to plaintiff, no one informed him.

Plaintiff reported to work at around 8:50 a.m., his normal start time. When plaintiff arrived at the school, another employee told him about the two-hour delay. Plaintiff realized he had forgotten his identification badge, radio, and headpiece at his house, which plaintiff contends District policy required him to have at all times, so he went home to retrieve them. On his way back to the school, plaintiff's car was rear-ended by a tractor-trailer (the "accident"). Plaintiff did not return to work that day and was out from work for at least a week because of injuries sustained in the accident. According to the District, there are no time sheets for plaintiff from the day of the accident.

According to plaintiff, he contacted Mary Leimer, the District's assistant superintendent for human resources at the time, to let her know he wanted to file a workers' compensation claim for the injuries he sustained in the accident. Plaintiff testified Ms. Leimer argued with him, saying she believed the accident was not work related because school had been delayed two hours. Plaintiff also claims Ms. Leimer told him if he tried to file for workers' compensation it would be fraud, warranting his termination.

Plaintiff disagreed with Ms. Leimer, arguing the accident was work related because, among other things, no one told him there was a two-hour delay. In any event, a law firm's paralegal told plaintiff that because of the school's "combativeness," he was better off filing for motor vehicle no-fault benefits. (Doc. #97 ("Lineen Decl.") Ex. B ("Rajcoomar Tr.") at 145). Plaintiff filed for no-fault benefits, and not for workers' compensation.

In his application for no-fault benefits, plaintiff affirmed under penalty of perjury that the accident did not occur in the course of his employment.[2] Further, on March 29, 2011, Ms. Leimer signed a New York Motor Vehicles No-Fault Insurance Employer's Wage Verification Report representing that plaintiff was not receiving and was not entitled to receive workers' compensation benefits as a result of the accident.

On October 23, 2013, plaintiff's supervisor notified plaintiff he was going to be terminated because he had been absent from work for more than one year. According to plaintiff, he then spoke with Ms. Leimer on the telephone on October 25, 2013. Plaintiff testified he threatened to sue for discrimination. According to plaintiff, Ms. Leimer responded by telling plaintiff "to show her in good faith that I was not going to sue her, to file my disability application and once she receives that she'll go through with the termination." (Rajcoomar Tr. at 211). Plaintiff further stated, "Ms. Leimer told me that if I didn't complain, she could guarantee me an early disability retirement." (Doc. #102 ("Rajcoomar Decl.") Ex. J ("Rajcoomar Aff.") ¶ 12).

Plaintiff requested an application for disability retirement benefits from the New York State and Local Retirement System (the "NYSLRS"). See N.Y. Retire. & Soc. Sec. Law § 605.

---

[2]     Plaintiff objects to the District's submission and reliance on his no-fault benefits application because (i) according to plaintiff, the District did not provide plaintiff with copies of the exhibit before November 29, 2017, which plaintiff argues was the discovery deadline; (ii) the District failed to supplement its Rule 26(e) initial disclosures to list the document; and (iii) according to plaintiff, the District coerced him into "signing this document and taking this position under threat of termination." (Doc. #104 ("Plaintiff's 56.1 Counterstatement") at 5). However, the record shows the document was obtained pursuant to a valid subpoena authorized by Magistrate Judge Smith on February 27, 2018, and produced to plaintiff on May 2, 2018. In addition, plaintiff's contention that the District coerced him into signing the application, even if supported by the record (which the Court need not decide here), goes to the weight of the document, not its admissibility.

On approximately November 4, 2013, plaintiff submitted an application for disability retirement benefits. On November 27, 2013, the District terminated plaintiff.

II.     Plaintiff's Disability Retirement Benefits Application and Proceedings

The application for disability retirement benefits called for plaintiff to state the medical conditions due to which he was permanently disabled. Plaintiff wrote: "Syncopy, loss of feeling right hand fingers Visual field Defect Right eye 20/200 vision, Cervical fusion C-5, C-6-C-7, Hernia (Abdomen), Fatty liver disease, ankle reconstructed (right), Nueroma left foot, Post concussion syndrome, loss of hearing." (Lineen Decl. Ex. G at DEF 1557).[3] Plaintiff also listed six hospital admissions, all of which occurred from 2011 to 2013. As for dates and locations of accidents, plaintiff listed only the January 25, 2011, car accident. Under description of the accident, plaintiff wrote, "Returning back to work on paid two hour delay due to inclement weather. Involved in motor vehicle accident rear ended by tractor trailer. Accident was on 1-25-11." (Id. at DEF 1558). And under witnesses, plaintiff listed one witness to the accident.

On October 2, 2014, the NYSLRS denied plaintiff's application for disability retirement benefits. The NYSLRS found plaintiff had less than ten years of total service credit, and "the alleged accident on 01/25/2011 was not caused by nor did it occur during the course of the applicant's duties." (Lineen Decl. Ex. H at DEF 805). Plaintiff requested a hearing and redetermination on his application.

On February 17, 2015, the NYSLRS held a hearing regarding plaintiff's request for a redetermination on his application for disability retirement benefits, at which plaintiff was represented by legal counsel.

---

[3]     All references to the record are to the Bates-stamped numbers on the bottom right of each page, unless otherwise noted.

On March 10, 2016, the NYSLRS issued a Final Determination and Decision of the Hearing Officer denying plaintiff's disability retirement benefits application. The hearing officer found plaintiff's attorney had conceded plaintiff did not have ten years of service credit, and plaintiff had "failed to provide credible evidence establishing that his injuries occurred while performing his work duties." (Lineen Decl. Ex. K at DEF 747). The hearing officer further held:

> Under the circumstances of this case, the school district's decision with respect to the opening of school that day and its apparent failure to notify applicant of the delay are not material to this determination. [Plaintiff], who chose to drive home under conditions that posed great risk to himself, was not "in service" at the time of his injury and therefore ineligible for disability retirement benefits.

(Id.) (collecting cases).

Plaintiff subsequently commenced an Article 78 proceeding in the New York Supreme Court, Appellate Division, Third Judicial Department, which issued a Memorandum and Judgment on February 16, 2018, affirming the NYSLRS's decision. The court found "substantial evidence supports respondent's determination that petitioner was engaged in a personal activity, rather than performing work duties, when he returned home to retrieve the work equipment that he, due to his own error, mistakenly left at home." (Lineen Decl. Ex. L).

III.    The NYSLRS's Requests for Information from the District

On December 2, 2013, the District received a letter dated November 21, 2013, from the NYSLRS notifying the District that the NYSLRS had received plaintiff's disability retirement benefits application. The letter stated, "[Plaintiff] alleges the following accident(s) on: 01/25/2011." (Lineen Decl. Ex. D ("Leimer Aff.") Ex. 3 at DEF 69). The letter requested: (i) a detailed statement of plaintiff's duties; (ii) medical records and Workers' Compensation reports concerning plaintiff; (iii) "a statement indicating the exact hours [plaintiff] was scheduled to begin and end employment on: 01/25/2011"; and (iv) other information concerning the accident,

including a copy of a time sheet if there was one, plaintiff's duties on the day of the accident, the activities at the time of the incident, accident reports, and a statement of lost time due to the accident. (Id.).

The District received a second request for the same information on February 4, 2014, dated January 28, 2014, and inexplicably titled "Third Request." (Leimer Aff. Ex. 4 ("January 28, 2014, Request") at DEF 46). A member of the District's human resources staff, Barbara Watt, compiled information in response to the request and "indicated certain information on the request itself." (Lineen Decl. Ex. E ("Watt Aff.") ¶ 7). Watt states she had "no knowledge of whether [plaintiff] made any claims or complaints of discrimination or retaliation during his employment with the District." (Id. ¶ 18).

According to Ms. Watt, she "interpreted the request from the NYSLRS as pertaining to documents and information regarding the January 25, 2011 accident and injuries sustained in that accident only." (Watt Aff. ¶ 6). Moreover, Ms. Watt wrote on the request itself:

- "No accident report or Workers Compensation – Car accident – Not work related," in response to the request for accident and Workers' Compensation reports regarding the January 25, 2011, incident;

- "Not applicable he was not working at time of car accident," in response to the request for the hours plaintiff was scheduled to work on the day of the accident; and

- "Accident – was auto accident that occur[r]ed before work hours," in response to the request for time sheets and duties on the day of the accident and activities at the time of the incident.

(January 28, 2014, Request at DEF 46). Ms. Watt also provided the NYSLRS with a job description for the District's School Monitor position, a form completed by the District's payroll

department, and medical records and doctors' notes related to the accident. Ms. Leimer states she reviewed the compiled materials and forms before they were forwarded to the NYSLRS.[4]

On January 5, 2015, Ms. Leimer received a third request for information from the NYSLRS, as plaintiff had requested a hearing and redetermination on his application. The request, dated December 29, 2014, was for "all new applicant-related documentation compiled since October 02, 2014 and forward all new records to our attention, if such documents are available." (Leimer Aff. Ex. 8 at DEF 41). The request also stated that NYSLRS had already asked Ms. Leimer's office for "all medical and employment records related to the applicant." (Id.). As the District had terminated plaintiff's employment on November 27, 2013, the District had not obtained any new documents or medical records regarding plaintiff since that time, and did not provide any information in response.

According to plaintiff, he spoke with Ms. Leimer on the phone on January 21, 2015, and Ms. Leimer admitted to lying to the NYSLRS. In plaintiff's affidavit submitted in opposition to the motion for summary judgment, dated July 2, 2018, plaintiff says he told Ms. Leimer he knew she lied to the retirement system, "and she admitted to it by saying 'yeah and' while laughing and saying 'take it up with the state before disconnecting the phone call.'" (Rajcoomar Aff. ¶ 16). Ms. Leimer testified she did not recall speaking to plaintiff on the phone that day. At plaintiff's deposition on August 10, 2017, plaintiff testified he did not recall what Ms. Leimer said during the phone call, and that his basis for saying Ms. Leimer admitted to lying in that conversation was: "She told me to take it up with the state and she was laughing and I felt that

---

[4]    Plaintiff disputes Ms. Watt's and Ms. Leimer's roles in preparing the response to the NYSLRS, arguing he cannot validate their testimony. Plaintiff's argument amounts to pure speculation, and is insufficient to create an issue of fact. See Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) ("Although all inferences must be drawn in favor of the nonmoving party, mere speculation and conjecture is insufficient to preclude the granting of [a motion for summary judgment].").

she knew what was she [sic] doing was wrong."  (Rajcoomar Tr. at 265–66).  Moreover, plaintiff

testified:

> Q.  During that conversation that you had with Ms. Leimer in January of 2015, did
> she ever say to you "I lied to the retirement system?"
> A.  I can't recall.
> Q.  Did she ever say during that conversation "The information I provided is false?"
> A.  No, she didn't say that.
> Q.  Did she ever say during that conversation "The information I provided is
> inaccurate?"
> A.  No.
> Q.  What's your basis for the statement that Ms. Leimer knew what was she [sic]
> doing and did it on purpose?
> A. I've seen statements that she supplied the New York State Retirement System
> that were produced.

(Id. at 266–67).

According to plaintiff, Ms. Watt called him on January 21, 2015.  Plaintiff testified he

told Ms. Watt the information she had was incorrect, and he believed "what was happening was a

furtherance of discrimination and Mrs. Leimer was retaliating against me."  (Rajcoomar Tr. at

250).  According to plaintiff, Ms. Watt said "she was going to go over it with the retirement

system."  (Id. at 252).  Ms. Watt states she "never promised or represented to [plaintiff] that I

would change or 'correct' information that had been forwarded to the NYSLRS in connection

with his application."  (Watt Aff. ¶ 17).

On February 5, 2015, the District received a fourth request from the NYSLRS, dated

January 26, 2015, for "a written statement on Newburgh City School District's policy on school

delays and closings."  (Leimer Aff. Ex. 9 at DEF 38).  In response, the District provided the

NYSLRS with the District's Policy No. 8410, titled "Emergency Closing of School."  (Leimer

Aff. Ex. 9 at DEF 956).

IV.     Procedural History

Plaintiff commenced this case on March 4, 2016, and filed an amended complaint on

May 24, 2016.  On July 21, 2016, the District moved to dismiss the amended complaint, and on

March 13, 2017, the Court granted in part and denied in part the motion.  (Doc. #41).  The Court

granted the motion as to all acts alleged to have taken place leading up to and including

plaintiff's termination in November 2013, and as to plaintiff's state law claims, but denied the

motion as to plaintiff's Title VII and ADA retaliation claims on the basis of denial of retirement

benefits.

## DISCUSSION

I.     Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery

materials before the Court, and any affidavits show there is no genuine issue as to any material

fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law

. . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot

preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a

reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby,

Inc., 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether

there are any factual issues to be tried."  Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir.

2010) (citation omitted).  It is the moving party's burden to establish the absence of any genuine

issue of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. at 323.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations and quotation omitted).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him.  Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial.  Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.     Title VII and ADA Retaliation Claims

Plaintiff claims the District retaliated against him for threatening to sue the District on his October 25, 2013, phone call with Ms. Leimer, by submitting false information to the NYSLRS in response to its requests for information regarding plaintiff's application for disability retirement benefits.  The District argues plaintiff's Title VII and ADA retaliation claims fail as a matter of law because plaintiff fails to present evidence that the District's legitimate, non-discriminatory reasons for its responses to the NYSLRS were pretextual.

The Court agrees with the District.  Assuming without deciding that plaintiff has established a prima facie case, the District has carried its burden of demonstrating legitimate, non-discriminatory reasons for its responses to the NYSLRS, and plaintiff has failed to produce evidence sufficient to permit a rational factfinder to find the District's reasons constituted pretext for impermissible retaliation.

Title VII's anti-retaliation provision "forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids." Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)).  Similarly, the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).

 The familiar three-step McDonnell Douglas burden-shifting framework applies to both plaintiff's Title VII and ADA retaliation claims.  Rosinski v. Am. Axle & Mfg., Inc., 402 F. App'x 535, 536 (2d Cir. 2010) (summary order); see also Lovejoy-Wilson v. NOCO Motor

Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001) ("We analyze a retaliation claim under the ADA using the same framework employed in Title VII cases.").[5]

Plaintiff must first establish a <u>prima facie</u> case. See <u>Weiss v. Morgan Stanley Inv. Mgmt.</u>, 345 F. App'x 713, 714 (2d Cir. 2009) (summary order). To establish a <u>prima facie</u> case of retaliation, plaintiff must show "(1) he engaged in [protected activity]; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." <u>Treglia v. Town of Manlius</u>, 313 F.3d 713, 719 (2d Cir. 2002).[6]

"Once plaintiff sets forth a prima facie case, defendant then bears the burden of demonstrating a non-discriminatory basis for the complained-of action." <u>Weiss v. Morgan Stanley Inv. Mgmt.</u>, 345 F. App'x at 714. "If defendant meets its burden, 'the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation.'" <u>Id.</u> (quoting <u>Treglia v. Town of Manlius</u>, 313 F.3d at 721).

To satisfy the burden of showing pretext on summary judgment, a plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action.'" <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 42 (2d Cir. 2000) (alterations omitted) (quoting <u>Van Zant v. KLM Royal</u>

---

[5]    Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See <u>Lebron v. Sanders</u>, 557 F.3d 76, 79 (2d Cir. 2009).

[6]    "[T]here is an unsettled question of law in this Circuit as to whether a plaintiff must show, in order to succeed on her ADA retaliation claim, that the retaliation was a 'but for' cause of the adverse employment action or merely a 'motivating factor.'" <u>Flieger v. E. Suffolk BOCES</u>, 693 F. App'x 14, 18 (2d Cir. 2017) (summary order) (citing <u>Eisner v. Cardozo</u>, 684 F. App'x 29, 30 (2d Cir. 2017) (summary order)).

Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996)). "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." Id. "The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext." Vitti v. Macy's Inc., 2018 WL 6721091, at *3 (2d Cir. Dec. 21, 2018) (quoting El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010)).

The Court first addresses the District's proffered non-discriminatory reasons for its responses to the NYSLRS. To the extent plaintiff's arguments as to pretext are intertwined with the District's specific responses to the NYSLRS, the Court addresses those arguments in the same section. The Court then addresses plaintiff's remaining arguments regarding pretext.

A.    Non-Discriminatory Reasons for the District's Responses

The District has demonstrated non-discriminatory bases for its responses to the NYSLRS's requests for information.

Plaintiff identifies at least four ways in which the District allegedly gave false information to the NYSLRS in retaliation for plaintiff's threat to sue the District: (i) telling the NYSLRS the accident was not work related; (ii) advising the NYSLRS that plaintiff was absent on January 25, 2011 (the day of the accident); (iii) failing to forward to the NYSLRS a 2007 workers' compensation report related to a hand injury plaintiff states he sustained at work; and (iv) providing the wrong job description to the NYSLRS, which did not include the fact that plaintiff's job entailed driving.[7]

_____

[7]    Plaintiff also seems to claim the District failed to inform the NYSLRS there was a two-hour delay on the day of the accident. Plaintiff's assertion is without merit. The NYSLRS did not ask the District whether there was a two-hour delay. Instead, the NYSLRS requested that the

First, plaintiff's assertion that the District falsely told the NYSLRS that the accident was not work related is belied by the fact that plaintiff himself submitted an application for no-fault benefits in which he affirmed under the penalty of perjury that the accident did not occur in the course of his employment. Moreover, the District did not possess any time sheets for plaintiff from the day of the accident, indicating to Ms. Watt, who wrote the responses at issue, that plaintiff was not at work that day. Nor did the District possess any workers' compensation claims from plaintiff for the accident, which would have indicated that the injury occurred "on the job." Matter of Rodriguez v. Burn-Brite Metals Co., 1 N.Y.3d 553, 555 (2003) (internal quotation omitted).

In addition, before plaintiff threatened to sue the District, Ms. Leimer signed a New York Motor Vehicles No-Fault Insurance Employer's Wage Verification Report on March 29, 2011, in which she affirmed plaintiff was not entitled to receive Workers' Compensation benefits. Thus, Ms. Watt's responses to the NYSLRS's later requests for information were consistent with Ms. Leimer's earlier representations—which were made well before plaintiff threatened to sue during the October 25, 2013, phone call with Ms. Leimer—regarding whether the accident occurred during the course of employment.

Second, regarding plaintiff's claim that the District falsely advised the NYSLRS that plaintiff was absent from work on the day of the accident, the District did not say, as plaintiff contends, that he was absent from work. Instead, the District stated, "[plaintiff] was not working at time of car accident." (January 28, 2014, Request at DEF 46). Thus, this issue is substantially the same as plaintiff's allegation regarding whether the accident occurred during the course of employment, analyzed above. Moreover, to the extent plaintiff takes issue with the fact that the

District provide the NYSLRS with its policy on school delays and closings, which is exactly what the District did.

District did not provide time sheets to the NYSLRS for January 25, 2011, the District presented

undisputed evidence that there were no time sheets for plaintiff for that day.  Plaintiff's

arguments that the District changed or destroyed his time records are pure speculation.

Third, undisputed evidence supports the District's proffered nondiscriminatory reason for

failing to forward a 2007 Workers' Compensation report related to a hand injury plaintiff states

he sustained at work:  Ms. Watt interpreted the NYSLRS's requests for information as pertaining

only to the January 25, 2011, accident.  In addition to Ms. Watt's affirmation to that effect, the

requests for information specify that plaintiff alleged an accident that occurred on January 25,

2011.  The requests do not mention any other incidents.

Plaintiff argues the requests required the District to supply "any medical records"

regarding plaintiff, and "copies of all Worker's Compensation C2 or C2.5 reports."  (January 28,

2014, Request at DEF 46).  But even those statements were contained in a paragraph that began

with, "[Plaintiff] alleges an accident occurring on 01/25/2011," and thus could reasonably be

interpreted to pertain only to the January 25, 2011, accident.  (Id.).  Further, the District has

offered testimony that there was no workers' compensation claim form for plaintiff's 2007

injury.  Plaintiff does not offer anything to rebut the District's evidence except his unsupported

speculation that the District destroyed the claim form.

Plaintiff argues his disability retirement benefits application indicated he was applying

based on multiple injuries, including an injury to his hand he avers he suffered at work in 2007.

However, there is no evidence the District relied on plaintiff's application in responding to the

NYSLRS's requests.  Moreover, even if the District had relied on plaintiff's application, the

application unambiguously relates only to the January 25, 2011, accident.  In two separate

sections, one asking for the dates of accidents and the other for descriptions of accidents related

to the claimed disability, plaintiff included information related only to the 2011 accident. Plaintiff also only included witnesses to the 2011 accident and hospital visits after the 2011 accident. Plaintiff argues he listed the 2007 hand injury as having caused a permanent disability, but plaintiff did not indicate he sustained this injury in the 2011 accident, and it would be preposterous to expect a reasonable person reading plaintiff's application to infer this was a reference to an otherwise unmentioned accident.

Fourth, there is no evidence the District provided the wrong job description to the NYSLRS. To the contrary, the only evidence in the record is that the job description the District provided to the NYSLRS was the only job description that would apply to plaintiff's position as an elementary school monitor. The Court also rejects the premise of plaintiff's argument: that the job description the District supplied unambiguously did not apply to elementary school monitors. The job description uses language that applies broadly to all school property and buildings, without specifying high school and middle school: it begins with the title "School Monitor"; states that the job "involves the performance of duties associated with monitoring of students' conduct on school property and providing security to school facilities and property"; and refers to "school buildings" throughout. (Leimer Aff. Ex. 3 at DEF 70).

Plaintiff points to the following language in the job description: "Work is performed under the direct supervision of the Senior School Monitor at the senior high school level and under the direct supervision of the principal in the junior highs and the middle school." (Leimer Aff. Ex. 3 at DEF 70). But even that language does not limit the job description to high school, junior high school, and middle school monitors. As Ms. Leimer accurately testified: "It doesn't state that it excludes others [sic] things. It mentions high school, it mentions middle school, but it doesn't exclude elementary school." (Lineen Decl. Ex. C ("Leimer Tr.") at 90).

Plaintiff argues the job description did not indicate that plaintiff's responsibilities included driving, and the NYSLRS based its decision in large part on the fact his job did not entail driving. There is no evidence the NYSLRS asked the District whether plaintiff's job entailed driving, or any evidence the District intentionally withheld that information. Indeed, plaintiff or his attorney could have presented that information to the NYSLRS if plaintiff believed it was important.

B.    Pretext

Plaintiff fails to produce evidence sufficient to permit a rational factfinder to conclude that the District's proffered non-discriminatory reasons for its responses to the NYSLRS were pretextual. Plaintiff relies primarily on temporal proximity, but temporal proximity alone is insufficient to satisfy plaintiff's burden of producing some evidence of pretext. Vitti v. Macy's Inc., 2018 WL 6721091, at *3.

The only possible evidence of pretext plaintiff submits beyond temporal proximity is his testimony concerning his January 21, 2015, phone call with Ms. Leimer, in which he claims Ms. Leimer admitted to lying to the NYSLRS. However, assuming the call occurred, plaintiff testified at his deposition he could not recall what Ms. Leimer said on the phone call, or whether Ms. Leimer admitted to lying. The Court therefore need not consider plaintiff's subsequent affidavit to the extent it contradicts plaintiff's testimony, including his testimony contradicting that he could not recall what Ms. Leimer said. See Kennedy v. City of New York, 570 F. App'x 83, 85–86 (2d Cir. 2014) (summary order) (holding a party may not create an issue of fact by "testif[ying] in his deposition that he was unable to remember a particular fact, and then, in response to a summary judgment motion, submitt[ing] an affidavit claiming a recollection of events that would have raised an issue for trial").

But even if plaintiff's affidavit did not contradict his earlier deposition testimony that he could not recall what Ms. Leimer said on the phone, a close reading of both the affidavit and the deposition transcript demonstrates the record does not support plaintiff's assertion that Ms. Leimer admitted to lying. First, plaintiff testified at his deposition that Ms. Leimer did not say the information she provided was false or inaccurate; plaintiff's deposition testimony thus contradicts plaintiff's subsequent assertion that Ms. Leimer said "yeah and" in response to plaintiff declaring she lied. (Rajcoomar Aff. ¶ 16). Second, plaintiff's testimony that Ms. Leimer laughed on the phone call and told plaintiff to "take it up with the state" does not say anything about whether Ms. Leimer conceded to lying or providing false information. And third, plaintiff's remaining basis for asserting Ms. Leimer intentionally lied was that he saw the statements Ms. Leimer supplied to the NYSLRS and they were false, which merely begs the question. (Rajcoomar Tr. at 265; Rajcoomar Aff. ¶ 16).

Moreover, Ms. Leimer did not prepare the District's responses to the NYSLRS. Thus, plaintiff's claim also fails because he does not present any evidence that the person who did prepare the District's responses to the NYSLRS—Ms. Watt—knew of plaintiff's threat to sue when she first responded to the NYSLRS's requests for information. In fact, according to Ms. Watt, she had "no knowledge of whether [plaintiff] made any claims or complaints of discrimination or retaliation during his employment with the District." (Watt Aff. ¶ 18). Likewise, there is no evidence in the record that Ms. Leimer directed Ms. Watt to provide false information to the NYSLRS.

Plaintiff argues he complained of discrimination in a phone call with Ms. Watt on January 21, 2015, but Ms. Watt had already responded to the NYSLRS's January 28, 2014, request for information, and provided all the information plaintiff contends was incorrect.

Indeed, the NYSLRS had already denied his claim on October 2, 2014, and plaintiff's request for a rehearing and redetermination was pending. The only information Ms. Watt supplied to the NYSLRS after the January 21, 2015, phone call with plaintiff was the District's policy on the emergency closing of schools.[8]

Plaintiff argues he should be considered to have been at work when the accident occurred because: (i) Ms. Leimer failed to call him to alert him of the two-hour delay on the day of the accident, as required by District policy; (ii) he did not call out sick—rather, he showed up at school before the accident;[9] and (iii) he was paid for working during the two-hour delay. Plaintiff's arguments are beside the point. Even if true, they would not show that the District's non-discriminatory reasons for responding to the NYSLRS's requests for information were pretextual. Essentially, plaintiff's arguments concern mere differences of opinion, and not whether the District acted discriminatorily or whether the District's proffered non-discriminatory reasons for its responses to the NYSLRS are false.

Plaintiff also argues the District treated him differently than similarly situated employees. A plaintiff may raise an inference of discrimination "by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) (internal citations omitted). "Employees used as comparators in such an analysis need not be

---

[8] Plaintiff's assertion that the District now relies on a different policy for emergency closing is not supported by the record. The District submitted a "Procedure for Emergency Inter-School Calling and Unscheduled Closings for the 2010-2011 school year" (Leimer Aff. Ex. 2), which on its face did not replace the policy the District sent to the NYSLRS.

[9] To the extent plaintiff argues the District falsely told the NYSLRS that plaintiff called out sick on the day of the accident, there is no admissible evidence in the record supporting plaintiff's hypothesis. Plaintiff's assertion that he was told by someone from the NYSLRS that the District said he had been out sick is inadmissible hearsay. See Fed. R. Evid. 801.

identically situated, but only must be similarly situated in all material respects." Berube v. Great Atl. & Pac. Tea Co., 348 F. App'x 684, 686 (2d Cir. 2009) (summary order) (internal citation omitted). "Showing similarity 'in all material respects' requires that the plaintiff and the comparator were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" Assue v. UPS, Inc., 2018 WL 3849843, at *13 (S.D.N.Y. Aug. 13, 2018) (quoting Graham v. Long Island R.R., 230 F.3d at 40). "Ordinarily, the question [of] whether two employees are similarly situated is a question of fact for the jury." Berube v. Great Atl. & Pac. Tea Co., 348 F. App'x at 686 (quoting Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003)).

Plaintiff identifies three allegedly similarly situated employees: (i) Ms. Calman, a teacher who allegedly was in an auto accident before school hours and was not docked time when she arrived late; (ii) Mr. Mathis, a fellow school monitor who "arrived to school wearing crocs for shoes," was sent home to retrieve proper attire, and was considered on the clock; and (iii) Ms. Castleberry, a fellow school monitor who "was injured while falling off a school stage that she had no business being on," but was paid workers' compensation benefits for the injury. (Rajcoomar Aff. ¶ 24).

As a matter of law, plaintiff fails to show the three employees were engaged in similar conduct to plaintiff. None of the employees applied for disability retirement benefits, let alone applied for disability benefits because of an injury that occurred in a situation similar to the January 25, 2011, accident. Indeed, there is no evidence the District provided any information, true or false, to the NYSLRS or any other entity concerning any of the three employees.

Accordingly, defendant is entitled to summary judgment on plaintiff's Title VII and ADA retaliation claims.

**CONCLUSION**

The motion for summary judgment is GRANTED.

The Clerk is instructed to (i) terminate the motion (Doc. #93), and (ii) close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: February 19, 2019
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge